Ruth GUMFORY, Appellant,

v.

**HANSFORD COUNTY COMMISSION-ERS COURT et al., Appellees.**

No. 8820.

Court of Civil Appeals of Texas, Amarillo.

Dec. 30, 1977.

Rehearing Denied Jan. 30, 1978.

Selden B. Hale, Amarillo, for appellant.

Gibson, Ochsner, Adkins, Harlan & Hankins (Iral L. Edwards, Jr.), Amarillo, for appellees.

DODSON, Justice.

In this case Ruth Gumfory is appellant and the Hansford County Commissioners Court, County Judge Johnnie Lee and Com-

missioners Joe Day, Joe T. Venneman, B. W. Renner and George C. Lowe, who compose the court, are the appellees herein.

In the court below Mrs. Gumfory brought her action against the Commissioners Court alleging that the division of the commissioners precincts in Hansford County, Texas, as promulgated by the Commissioners Court on or about August 23, 1976 is unconstitutional under Article 5, Section 18, Texas State Constitution, and under the equal protection clause of the 14th Amendment of the Constitution of the United States. Mrs. Gumfory requested the trial court to declare such division of the Commissioners Court in Hansford County, Texas, unconstitutional and illegal and further requested the court to "draw four new contiguous Commissioner's Precincts each of which contain approximately an equal number of citizens."

The case was tried before the court without a jury. The court entered a take-nothing judgment against Mrs. Gumfory and thereby denied any requested relief. From this judgment Mrs. Gumfory appeals to this court. We reverse the judgment of the trial court and render judgment setting aside the 23 August 1976 order of the Commissioners Court.

The county of Hansford is 907 square miles. It has a geometric shape of an approximate square with dimensions of approximately 30 × 30 miles. It contains a total population of 5,979 persons. The population is divided between the city of Spearman, the city of Gruver and the country area of the county outside these two cities. The city of Gruver has a total population of 1,190 persons; the city of Spearman has a total population of 3,227 persons; and the remaining 1,562 persons reside in the country area of the county.

Under the division of the county of Hansford into commissioners precincts as promulgated by the Commissioners Court of such county on or about the 23rd day of August, 1976, the county was divided basically into four equal quarters, being the southeast, the northeast, the northwest and the southwest one-fourth of the county.

The city of Spearman, which is located in the southeast one-fourth of the county, was divided into three portions, consisting of the east portion, the middle portion and the west-southwesterly portion. The city of Gruver was divided into two unequal portions consisting of a small northeastern portion and a large remaining portion.

These nine areas and the respective population therein were arranged into four so-called commissioners precincts. The areas designated as precincts one and four were territorially contiguous within each precinct and had a population of 1,520 and 1,476 residents, respectively. The areas designated to comprise precincts two and three were territorially non-contiguous and had a population of 1,508 and 1,475 residents, respectively.

The resulting territorial arrangement and the population apportionment of each precinct were as follows:

Commissioner Precinct No. One: This precinct consisted of the southeast one-fourth of the county including the west-southwest portion of the city of Spearman, excluding the middle and east portions of Spearman. Precinct one was contiguous in territorial arrangement. It had a total population of 1,520. One thousand one hundred forty-six of this number resided in the city of Spearman, and the remaining 380 persons resided in the country area in the southeast one-fourth of the county.

Commissioner Precinct No. Two: This precinct consisted of the northeast one-fourth of the county and the middle portion area of the city of Spearman. The areas comprising this precinct were non-contiguous. The northeast one-fourth of the county and the middle portion area of the city of Spearman were separated by approximately four and one-half miles. It had a total population of 1,508. One thousand two hundred forty-seven of this number resided in the city of Spearman and the remaining 261 residents resided in the country area in the northeast one-fourth of the county.

Commissioner Precinct No. Three: This precinct consisted of the northwest one-

fourth of the county, the northeast portion of the city of Gruver and the east portion area of the city of Spearman. The areas designated with this precinct number were non-contiguous. The northwest portion of the county and the east portion area of the city of Spearman were separated by approximately nine miles. It had a total population of 1,475. Eight hundred and thirty-four of this number resided in the city of Spearman, 174 resided in the city of Gruver, and the remaining 467 resided in the country area of the northwest one-fourth of the county.

Commissioner Precinct No. Four: This precinct consisted of the southwest one-fourth of the county including the large portion area of the city of Gruver and excluding the northeast portion area of the city of Gruver. The precinct was territorially contiguous. It had a total population of 1,476. One thousand sixteen of this number resided in the city of Gruver, and the remaining 460 resided in the country area comprising the southwest one-fourth of the county.

Initially, Mrs. Gumfory complains that "[t]he trial court erred in allowing the County Commissioners Court to create commissioners precincts composed of non-contiguous parts in violation of the State Constitution."

Article 5, Section 18 of the Texas Constitution provides in part as follows:

Each organized county in the State now or hereafter existing, *shall be divided from time to time, for the convenience of the people,* into precincts, not less than four and not more than eight. *Divisions shall be made by the Commissioners Court provided for by this Constitution.* In each such precinct there shall be elected one Justice of the Peace and one Constable, each of whom shall hold his office for four years and until his successor shall be elected and qualified; . . . *Each county shall in like manner be divided into four commissioners precincts in each of which there shall be elected by the qualified voters thereof one County Commissioner,* who shall hold his office

for four years until his successor shall be elected and qualified. (Emphasis added.)

We have not been directed to nor have we found any Texas cases directly or indirectly determining the territorial configuration of "commissioners precincts".

We conclude that the common meaning of the phrase "commissioners precincts" denotes a territorially contiguous area. This conclusion is supported in part by the definition of the word "precinct" found in Webster's New International Dictionary 1943 (2nd ed. 1961) as follows:

pre'cinct . . . to gird about, encompass . . . 1. The enclosure bounded by the walls or other limits of a building or place or by an imaginary line around it; as, the *precincts* of a church; esp., *pl.,* the region immediately surrounding a place; environs. 2. Specif., the inviolable spaces within the girth, mund, or peace of a house, borough, or the like, in the customary law of the Anglo-Saxons and some other Teutons. 3. A surrounding or enclosing line or surface; a boundary. 4. A district within certain boundaries, esp. one set out for governmental purposes; a minor territorial or jurisdictional division, as: a *Eng.* A district for which a high or petty constable is appointed. b A division of a city or town, as for police control. c *U.S.* A subdivision of a ward or county for election purposes, etc.

Also, the legal as well as the popular idea of a commissioner precinct in this country, by name and use, as to territorial configuration is one of unity, not plurality, of contiguity or compactness, not segregation or separation. This common idea further denotes oneness of a location and vicinity, a collective body, not several bodies. *See* 72 C.J.S. *Precinct* at page 477, 20 C.J.S. *Counties* § 40 (1940), 56 Am.Jur.2d *Municipal Corporations, Etc.* § 69 (1971).

The Commissioners Court contends, among other things, in its brief that it acted in the best interest of the county, that Mrs. Gumfory has no standing as a citizen to contest its action dividing the county into commissioners precincts, and further that

such action is beyond the scope of judicial review. The Commissioners Court in its brief relies on *Bexar County v. Hatley*, 136 Tex. 354, 150 S.W.2d 980 (1941); *Ward v. Bond*, 10 S.W.2d 590 (Tex.Civ.App.—Amarillo 1928, no writ); and *Garcia v. State*, 290 S.W.2d 555 (Tex.Civ.App.—San Antonio 1956, writ ref'd n. r. e.) to support its position.

*Bexar County v. Hatley* and *Garcia v. State* concerned administrative decisions of the Commissioners Court, not, as is before us, the constitutionality of a legislative action of apportionment by the Commissioners Court. *Ward v. Bond* exemplifies the prevailing attitude of judicial laissez-faire by the courts concerning the review of legislative apportionment matters prior to the decisions in *Baker v. Carr*, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962); *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964); *Avery v. Midland County*, 406 S.W.2d 422 (Tex.1966), *reversed on other grounds*, 390 U.S. 474, 88 S.Ct. 1114, 20 L.Ed.2d 45 (1968); and *Hatter v. Worst*, 390 S.W.2d 293 (Tex.Civ.App.—Amarillo 1965, writ ref'd n. r. e.). We determine that such cases are not controlling on the issues before this court.

■ Article 5, Section 18 provides, among other things, that the Commissioners Court shall divide the county into four commissioners precincts "for the convenience of the people." The action is tested by constitutional standards, and Mrs. Gumfory, as a resident of the county of Hansford, has standing to bring this action and likewise the action by the Commissioners Court of Hansford County in dividing the county into four commissioners precincts is subject to judicial review. *See Avery v. Midland County, supra,* and *Hatter v. Worst, supra.*

■ For us to depart from the legal, popular, and common concept of territorial contiguity of commissioners precincts as contended by the Commissioners Court in this case would do no more than place another gerrymandering tool in the hands of the apportioning body. This court must notice with common knowledge that many counties of this state have numerous voting precincts numbering in the tens and hundreds and that the method of division of reapportionment employed in this case encourages the "checkerboarding" and "spot zoning" of commissioners precincts, which we decline to judicially approve.

Mrs. Gumfory's first point of error is sustained and we hold that the phrase "commissioners precincts" as used in the Constitution of this State means that such precincts must be territorially contiguous.

■ Secondly, Mrs. Gumfory complains that "the trial court erred in allowing the Commissioners Court to institute a redistricting scheme that dilutes and diminishes the votes of Hansford County citizens outside the city of Spearman, a denial of the equal protection clause of the United States Constitution." The essence of this complaint is that the redistricting scheme dilutes and diminishes the votes of Hansford County residents who live outside the city of Spearman, thus denying them equal protection of the law under the United States Constitution.

It is true that in precincts one, two, and three the total number of residents in the city of Spearman far outnumber the number of country area residents. And likewise in precinct four, the residents of Gruver greatly outnumber the country area residents. Thus, in each of the precincts one, two, and three the residents of the city of Spearman enjoy a mathematical majority and in precinct four the residents of Gruver have an even greater mathematical majority.

The effect of this division of the population of Hansford County is to place the city dwellers in Spearman and Gruver in a mathematical majority in all four commissioners precincts.

The effect of Mrs. Gumfory's contention is that the equal protection clause of the United States Constitution guarantees that the 1,190 residents of Gruver and 1,562 country area dwellers outside of Spearman are entitled to two commissioners or places on the Commissioners Court.

Mrs. Gumfory relies on the United States Supreme Court decision in *Avery v. Midland County, supra,* at 424, 425. However, this case simply holds:

> The Equal Protection Clause does not, of course, *require that the State never distinguish between citizens,* but only that the distinctions that are made not be arbitrary or invidious. The conclusion of *Reynolds v. Sims* was that bases other than population were not acceptable grounds for distinguishing among citizens when determining the size of districts used to elect members of state legislatures. *We hold today only that the Constitution permits no substantial variation from equal population in drawing districts for units of local government* having general governmental powers over the entire geographic area served by the body. (Emphasis added.)

This case does not hold that every group, or particular class of citizens, are entitled to proportional representation in the governing body of the local unit of government.

This contention of Mrs. Gumfory was answered in *Howard v. Adams County Board of Supervisors,* 453 F.2d 455 (5th Cir. 1972) as follows:

> . . . we find that the plan passes constitutional muster. Further, *we reject the plaintiffs' notion that they are constitutionally entitled to have old District Four divided into two predominately black electoral districts simply because they command a population concentration of sufficient size and contiguity to constitute two equally apportioned districts. This rationale was rejected by Justice White* for the majority in *Whitcomb,* saying that such a contention
> ". . . [is] expressive of the more general proposition that any group *with distinctive interests must be represented in legislative halls if it is numerous enough to command at least one seat and represents a majority living in an area sufficiently compact to constitute a single-member district.* This approach would make it difficult to reject claims of Democrats, Republicans, or members of

any political organization . . . who live in what would be safe districts in a single-member district system but who . . . are submerged in a one-sided . . . vote." (Emphasis added.)

The U.S. Court of Appeals (5th Circuit) determined that the "dilution" test developed in *Burns v. Richardson,* 384 U.S. 73, 86 S.Ct. 1286, 16 L.Ed.2d 376 (1966) and *Whitcomb v. Chavis,* 403 U.S. 124, 91 S.Ct. 1858, 29 L.Ed.2d 363 (1971) is equally applicable to reapportionment plans involving only single-member districts, such as we have in this case. *See* 453 F.2d at 458 n. 2.

Also, the Court recognized in *Howard v. Adams County Board of Supervisors, supra,* at page 457 that:

> The gerrymander is as great a threat to equality of representation as malapportionment. While malapportionment generally emphasizes considerations of the weight of an individual's vote, a gerrymandering operates to destroy the effectiveness of the franchise by diluting the vote of *recognizable racial, ethnic, or political groups in order to benefit a favored interest.* (Emphasis added.)

However, in the case before us, Mrs. Gumfory has failed to show the scheme operates to destroy the effectiveness of the franchise of the Gruver and country area residents by diluting the vote of a recognizable racial, ethnic, or political group. Per se, the residents of Hansford County outside the city of Spearman are not a group subject to suspect classification for invidious discrimination under the equal protection clause of the 14th Amendment to the United States Constitution. Also, there is an emerging trend in the Federal Court decisions toward contiguous and reasonably compact legislative districts so as to avoid the suspicion of invidious discrimination against recognizable racial, ethnic, or political groups. *See Connor v. Finch,* 431 U.S. 407, 97 S.Ct. 1828, 52 L.Ed.2d 465 (1977); *Wells v. Rockefeller,* D.C., 273 F.Supp. 984 (1967). However, the record in this case is absent of any evidence of such discrimination. Mrs. Gumfory's second point is overruled.

In view of our conclusions Mrs. Gumfory's remaining two points become moot.

The judgment of the trial court is reversed and judgment is here rendered that the order of the Commissioners Court of Hansford County, Texas dated on or about the 23rd day of August 1976, wherein such Commissioners Court decreed a division of such county into commissioners precincts, be and the same is hereby set aside.