

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00107-CR
No. 02-22-00108-CR

———————————————

MARCELO RUIZ, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court Nos. F19-570-211, F18-2358-211

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Marcelo Ruiz appeals from his conviction for continuous sexual abuse of a child (in appellate cause number 02-22-00108-CR, trial court cause number F18-2358-211) and for aggravated sexual assault of a child (in appellate cause number 02-22-00107-CR, trial court cause number F19-570-211). In five issues in these two appeals, he challenges the transfer of proceedings from juvenile court to district court, the sufficiency of the evidence to support his convictions in both cause numbers, the jury charge used in trial court cause number F18-2358-211, and the constitutionality of Texas Penal Code Section 21.02 (the continuous sexual abuse statute). Because we hold that the district court had jurisdiction, that sufficient evidence supports Ruiz's convictions, that he was not egregiously harmed by any jury-charge error, and that Section 21.02 is constitutional, we will affirm.

## Background

In 2017, Ruiz's teenage half-sister, Elena,[1] told her mother about "inappropriate sexual contact" that Ruiz had perpetrated against Elena when she was younger. This abuse had occurred on the weekends when Elena had her visitation with her father, who is also Ruiz's father. Elena's mother reported those allegations to the police. In investigating the allegations, the detective in charge of the case learned

---

[1]We use pseudonyms for the complainants to protect their privacy. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

that Ruiz's former stepsister,[2] Olivia, had also made an outcry about sexual acts that Ruiz had committed against her when she was younger. In September 2018, Ruiz, who was then almost twenty-four years old, was indicted for continuous sexual abuse of Olivia. Ruiz was indicted only for offenses that were alleged to have occurred after his seventeenth birthday, but the abuse against Olivia had begun when Ruiz was under seventeen. The case against him for the acts that he had committed against Elena began as a juvenile matter, but the juvenile court waived its jurisdiction and transferred the matter to the district court.

The two cases were consolidated and tried together. At trial, witnesses testified about three different homes that Olivia's family (Olivia, her mother, and her brothers) and the Ruiz family (Ruiz, his father, and Elena on alternating weekends) had occupied together over the period when the abuse occurred. The families first lived together at a house that the parties referred to as the Heritage Lakes house. The families next moved to an apartment, which the parties referred to as the Austin Ranch apartment. Finally, Olivia's mother and Ruiz's father bought a house that the parties referred to as the Castle Hills house.

Olivia and Elena both testified. Both sisters provided a time frame for the abuse by referencing where the families were living at the time—with Elena staying there every other weekend—and Olivia additionally provided testimony about the

---

[2]Olivia's mother and Ruiz's father were never married, but they were in a long-term relationship and lived together, and Olivia referred to Ruiz as her stepbrother.

grade that she had been in when various acts occurred. The trial court also admitted school records of Ruiz and Olivia, and some of those records included their prior home addresses.

The jury found Ruiz guilty of continuous sexual abuse of Olivia, of two counts of aggravated sexual assault of Elena, and of one lesser-included count of indecency by contact of Elena. The jury assessed punishment at fifty years' confinement for the continuous sexual abuse of Olivia, fifty years' confinement for count I and for count II of the aggravated sexual assaults of Elena, and twenty years' confinement for the lesser-included indecency-by-contact offense. The trial court sentenced him accordingly and ordered the sentences to run concurrently.

## The Continuous Sexual Abuse Case

We begin by addressing Ruiz's issues in the appeal from his conviction for continuous sexual abuse (CSA) of Olivia.

## I. Evidentiary Sufficiency

In Ruiz's first issue, he asserts that that the evidence is insufficient to support a guilty verdict for CSA of Olivia. A person commits CSA of a child if, (1) "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse," (2) the person is 17 years of age or older when committing each act of sexual abuse; and (3) the victim is a child younger than fourteen years old. Tex. Penal Code Ann. § 21.02. For purposes of the statute, "acts of sexual abuse" include sexual assault under Texas Penal Code Section 22.011; aggravated sexual assault under Texas

4

Penal Code Section 22.021; and indecency with a child under Texas Penal Code Section 21.11(a)(1) "if the actor committed the offense in a manner other than by touching, including touching through clothing, the breast of a child." *Id.* Thus, acts of sexual abuse include intentionally or knowingly "caus[ing] the penetration of the anus or sexual organ of a child by any means," *id.* § 22.011(2)(A); intentionally or knowingly "caus[ing] the sexual organ of a child to contact or penetrate the mouth, anus, or sexual organ of another person, including the [person]," *id.* § 22.021(B)(iii); and touching any part of the child's genitals if committed with the intent to arouse or gratify the sexual desire of any person, *id.* § 21.11(c)(1).

**A. Standard of Review**

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our

5

judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

**B. Analysis**

Ruiz does not dispute that Olivia testified about ongoing sexual abuse that began when she was five years old. He complains, however, that the State failed to prove at least two qualifying acts that he committed at least thirty days apart after he turned seventeen. Because Ruiz did not turn seventeen until November 2011, the jury, in order to make its finding, needed evidence from which it could find that Ruiz had committed the acts of abuse after that time. As we will explain, the jury had evidence from which it could piece together a timeline and Ruiz's age at the pertinent times.

Olivia and her mother both testified that Olivia's birthday was in October 2002, meaning that in August 2008, she was five years old and a few months away from her sixth birthday. Some of Olivia's school records were admitted as an exhibit at trial, and those records listed her as being in kindergarten in August 2008. If Olivia was in kindergarten from fall 2008 to spring 2009, then she was in third grade from fall 2011 to spring 2012. Her school records confirm that she was in third grade at

that time. Thus, she began fourth grade in fall 2012. With those time references in mind, we consider Olivia's testimony about sexual abuse that had occurred when she was in the second half of her third-grade year and in her fourth-grade year.

Olivia recounted an instance when she was "in third grade, about to go in fourth" and the families were still living at the Heritage Lakes house.[3] She stated that on that day, Ruiz "ripped [her] hymen" by "inject[ing] his fingers into [her]," causing her to bleed. That act constitutes an act of sexual abuse under the CSA statute. *See* Tex. Penal Code Ann. § 21.02(c)(4). The jury could find that Olivia's statement that the event had occurred when she was still in third grade but about to be in fourth meant that the event occurred in the latter part of her third-grade year, i.e., spring 2012.

As for evidence of a second act of sexual abuse, Olivia testified about a time at the Austin Ranch apartment when Ruiz "touched [her] vagina" and then "tried to insert himself in [her]." That testimony describes acts that also qualify as sexual abuse under the CSA statute. *See id.* §§ 21.02(c), 21.11, 22.021. As for the timing of that event, she described it as happening after a different time on the couch at the Austin Ranch apartment when Ruiz sucked her fingers "in a sexual way." Olivia stated that the finger-sucking incident was the first inappropriate act Ruiz did at the Austin Ranch apartment, and she further stated that it had occurred in "third grade, fourth

_____

[3]As will be explained in more detail below, it is possible that Olivia's testimony as to the location of this abuse was incorrect.

7

grade" but then corrected herself that it was in fourth grade.[4] Thus, if she correctly remembered that the second act of abuse happened after the finger-sucking incident, then it happened no earlier than when she was in the fourth grade. She also said that the incidents did not stop after that, although she could not remember specific details of other assaults.

If the jury accepted Olivia's testimony, as it apparently did, then it could have found from that evidence that she had described at least two acts of abuse that had occurred more than thirty days apart—one act in the spring of 2012, when she was still in third grade, and one when she was in the fourth grade, meaning that it had occurred no earlier than the fall of 2012. From this testimony, a rational jury could have found beyond a reasonable doubt that Ruiz had committed two acts of sexual abuse thirty days or more apart. *See Queeman*, 520 S.W.3d at 622; *see also Brown v. State*, No. 05-19-00597-CR, 2020 WL 4034964, at *6 (Tex. App.—Dallas July 17, 2020, no pet.) (mem. op., not designated for publication) (holding that complainant's testimony that she was in fourth grade when one act of sexual abuse occurred and was in fifth grade when another occurred was evidence that the jury could consider in finding that the acts were thirty days or more apart).

---

[4]Olivia further testified that on multiple occasions—more times "than [her] fingers c[ould] count"—Ruiz "touch[ed] [her] clitoris and vagina," and that this happened at both the Heritage Lakes house and the Austin Ranch apartment.

Further, as noted above, testimony and school records indicate that Ruiz turned seventeen in November 2011. Thus, if he committed acts of sexual abuse against Olivia in 2012, he did so when he was seventeen. The jury could therefore find beyond a reasonable doubt that he had committed at least two acts of sexual abuse when he was seventeen.

Relying on Olivia's mother's testimony that the families had moved to Austin Ranch in 2010, Ruiz argues that the Heritage Lakes abuse described by Olivia does not satisfy the statute because he did not turn seventeen until after they had moved away from Heritage Lakes. He additionally discounts Olivia's testimony as "vague at best" and not "establish[ing] time frames as to when events occurred." Further, in his reply brief, Ruiz asserts that Olivia's testimony about when the families moved to Austin Ranch was "obviously incorrect" and that "[t]he trial evidence established that the famil[ies] moved from the Heritage Lakes house to the Austin Ranch apartment in about 2010."

We acknowledge that the testimony of Olivia, her mother, and the school records did not perfectly match on the question of when the families had lived in each of the three homes. Ruiz is correct that Olivia's mother testified that they had moved from the Heritage Lakes house to the Austin Ranch apartment "around 2010."[5]

---

[5]Olivia's mother also testified that the family moved to the Heritage Lakes house in 2007, but school records indicate that Ruiz did not transfer to the school district that corresponded with that address until 2008, even though he lived primarily with his father and therefore presumably would have been enrolled in the school

However, his argument does not address the school records indicating that the families still lived at the Heritage Lakes house through at least the 2010–2011 school year. Further, when Olivia was asked when they had moved from the Heritage Lakes house to the Austin Ranch apartment, she responded, "Between fourth grade. Third grade, fourth grade. . . . I would say finish my third[-]grade year." According to the school records, Olivia finished her third-grade year in May 2012. That testimony would mean that the move from Heritage Lakes to Austin Ranch was in 2012, around the end of her third-grade year. School records do not contradict that testimony: Ruiz's school records indicate that for the 2010–2011 school year, the families lived at the Heritage Lakes address, and in June 2012, the families lived at the Austin Ranch address. Thus, Olivia, her mother, and the school records provided conflicting evidence about when the families moved from Heritage Lakes to Austin Ranch.

Olivia and her mother both testified that the families next moved from the Austin Ranch apartment to the Castle Hills home. Olivia's mother stated that this occurred in 2012, and the school records show that the children had the Castle Hills address as of September 17, 2012.[6] Olivia did not testify about when the families moved to the Castle Hills house.

---

district for the address where he lived with his father. That is, the school records suggest that the family did not move to the Heritage Lakes house until 2008.

[6]Olivia's testimony and the school records do not rule out the possibility that the family lived at the Austin Ranch apartment for only a short time, moving there from the Heritage Lakes house before June 2012 and then moving from the Austin

It falls to the jury to reconcile conflicts in the evidence, *Bottenfield v. State*, 77 S.W.3d 349, 355 (Tex. App.—Fort Worth 2002, pet. ref'd), and the jury may accept all, some, or none of a witness's testimony, *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Accordingly, "[i]nconsistencies or contradictions in a witness's testimony do not destroy that testimony as a matter of law," *Estrella v. State*, 546 S.W.3d 789, 796–97 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd) (citing *McDonald v. State*, 462 S.W.2d 40, 41 (Tex. Crim. App. 1970), and inconsistencies in the testimony must be resolved in favor of the verdict, *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Machado v. State*, No. 02-15-00365-CR, 2016 WL 3962731, at *3 (Tex. App.—Fort Worth July 21, 2016, pet. ref'd) (mem. op., not designated for publication) ("[W]e must defer to the jury's implicit resolution of reasonable and competing inferences on the question of whether the abuse occurred over a period of thirty days or more.").

The school records do not contradict Olivia's testimony about when the families moved to the Austin Ranch apartment. However, the school records do contradict her testimony that the families lived at the Austin Ranch apartment when

---

Ranch apartment to the Castle Hills house soon after the fall 2012 semester started. The records contain a "Student Withdrawal/Record Transfer" form indicating that Olivia's fourth-grade year began in August 2012 and that she was withdrawn from the school in the middle of September 2012 because she was moving to "Castle Hills." Olivia's mother, however, testified that they had lived at the Austin Ranch apartment for "about two years, a year and a half." The jury was left to reconcile the conflicts in the evidence regarding when the family moved to each address.

she was in the fourth grade—or at least, they suggest that the families did not live there for most of her fourth-grade year. Although the records indicate the families lived at the apartment for part of Olivia's fourth-grade year, the records also contain the transfer form indicating that she transferred to a Castle Hills school soon after her fourth-grade year had started.[7] However, even if the jury believed that Olivia was incorrect about where the families were living when the abuse occurred, the jury could have also believed that she was correct about what grade level she had been in at the time of the abuse. *See Curry*, 30 S.W.3d at 406; *Russell v. State*, No. 05-10-00330-CR, 2012 WL 360806, at *2 (Tex. App.—Dallas Feb. 6, 2012, pet. ref'd) (mem. op., not designated for publication) ("While we acknowledge appellant's arguments regarding the discrepancies in some of the testimony about the date of the event in question, the jury heard this testimony and believed the victim."). Having made that determination, the jury could then find that one of the acts of sexual abuse that Olivia described had occurred in spring 2012—after Ruiz turned seventeen—and that another act had occurred several months later. *See Curry*, 30 S.W.3d at 406; *see also Machado*, 2016 WL 3962731, at *3. Thus, "viewing all of the evidence in the light most favorable to the verdict, the record contains evidentiary puzzle pieces that the jury could have carefully fit together to rationally find beyond a reasonable doubt" that

_____

[7]It is possible that when Olivia said that she was in fourth grade for one of the acts of abuse, she meant that the act had occurred in the summer between third grade and fourth grade. However, in her testimony, she did not reference being on summer break when any of the sexual abuse she described had occurred.

Ruiz's sexual abuse of Olivia had "occurred over a period of thirty days or more" and after Ruiz's seventeenth birthday. *See Machado*, 2016 WL 3962731, at *3.

Ruiz cites this court's opinion in *Clark v. State*, No. 02-19-00131-CR, 2020 WL 5949925, at *4 (Tex. App.—Fort Worth Oct. 8, 2020, no pet.) (mem. op., not designated for publication), to support his argument that Olivia's testimony did not support the jury's verdict. However, in that case, we stated that the child's testimony and pretrial statements "[did] not provide us with any guideposts for when the abuse occurred that would allow us to conclude, without speculating, that the first and last instances of abuse [had] occurred at least thirty days apart." *Id.* Here, Olivia provided references through her testimony about the grade level that she was in when various acts of sexual abuse occurred. We overrule Ruiz's first issue.

## II. Jury Charge

Ruiz asserts in his second issue that the trial court erred by submitting a charge to the jury that (1) did not contain the required elements for a finding of CSA, (2) contained conflicting instructions on the duration of acts that could be considered in determining whether Ruiz was guilty of CSA, and (3) did not contain a proper limiting instruction regarding juvenile acts that occurred when Ruiz was under seventeen.

### A. Jury Charge Requirements and Standard of Review

A jury charge's purpose "is to instruct the jurors on all of the law that is applicable to the case." *Vasquez v. State*, 389 S.W.3d 361, 366 (Tex. Crim. App. 2012).

13

Accordingly, the charge "must contain an accurate statement of the law and must set out all the essential elements of the offense." *Id.* (quotation marks and citation omitted). In reviewing a charge for error, we "must examine the charge as a whole instead of a series of isolated and unrelated statements." *Id.* (quotation marks and citation omitted).

The record does not show any objection by Ruiz to this part of the charge. Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19. In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge[;] the state of the evidence, including the contested issues and weight of probative evidence[;] the argument of counsel[;] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim. App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

With the applicable law and standard of review in mind, we set forth the jury charge and then address Ruiz's challenges to the charge.

**B. The Charge in This Case**

Section 1 of the charge instructed the jury on the elements of the offense:

> [A] person commits an offense if during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse, regardless of whether the acts of sexual abuse are committed against one or more victims, and at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.

Then, in Section 3, the jury was given two instructions regarding relevant time frames. First, the jury was told that it did not have to agree on the specific dates on which Ruiz had committed acts of sexual abuse but that it did have to agree that he had committed at least two acts of sexual abuse during a period of thirty days or longer:

> The members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must unanimously agree that the defendant, during a period that is 30 days or more in duration, committed two or more acts of sexual abuse.

Second, the jury was instructed that the State did not have to prove that the acts had occurred on the exact dates alleged in the indictment, but it did have to prove that Ruiz had committed the acts within a period of time beginning on the date on which he turned seventeen and ending before the date on which Olivia turned fourteen:

> You are charged as the law in this case that the [S]tate is not required to prove the exact date alleged in the indictment but may prove the offenses, if any, to have been committed at any time after the 5th day of

15

November, 2011—the date the Defendant turned 17—and prior to the [___][8] day of October, 2016—the date [Olivia] turned fourteen.

Finally, in Section 4, the application paragraph, the jury was told that to convict Ruiz, it had to find beyond a reasonable doubt that he committed at least two acts of sexual abuse in a period beginning on or about November 6, 2011 (Ruiz's seventeenth birthday) "through on or about" October ___, 2016[9] (Olivia's fourteenth birthday). It did not, however, include the CSA statutes' thirty-day duration requirement[10]:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 6th day of November[ ] 2011, through on or about the [___] day of October[ ] 201[6], in Denton County, Texas, the defendant, MARCELO RUIZ, did then and there commit two or more acts of sexual abuse, namely, Indecency with a Child and/or Aggravated Sexual Assault of a Child against [Olivia], to-wit: with the intent to arouse or gratify the sexual desire of the said defendant, engage in sexual contact with [Olivia] by touching the genitals of [Olivia] and/or intentionally or knowingly causing the penetration of the sexual organ of [Olivia] by the defendant's finger and/or intentionally or knowingly causing the sexual organ of [Olivia] to contact the sexual organ of the defendant, and at the time of the commission of each of those acts, the defendant was at least 17 years of age, and [Olivia] was a child younger than 14 years of age; you will find the defendant guilty of Continuous Sexual Abuse of a Young Child, as charged in the indictment.

---

[8]We omit the specific date of her birthday to protect her privacy.

[9]Olivia's fourteenth birthday was in 2016. In some places the charge reflected the correct year, but in other places, it said 2015 instead. Ruiz does not complain on appeal about that error in the charge.

[10]*See* Tex. Penal Code Ann. § 21.02(b).

16

## C. Analysis

### 1. Lack of limiting instruction regarding juvenile acts

We begin with Ruiz's argument that the trial court erred by failing to instruct the jury regarding his conduct prior to his seventeenth birthday. As he notes, Texas Penal Code Section 8.07(b) provides that except for certain specified offenses, "a person may not be prosecuted for or convicted of any offense committed before reaching 17 years of age" unless the juvenile court has waived jurisdiction. Tex. Penal Code Ann. § 8.07(b). Ruiz argues that the jury should have been instructed on that law.

However, the CSA statute includes the perpetrator's age as an element of the offense, and the jury charge in this case listed the age requirement as an offense element. Further, the application paragraph specifically instructed the jury to consider only acts of sexual abuse that Ruiz had committed after he had turned seventeen. Thus, because we presume that the jury followed the trial court's instructions absent evidence otherwise "and because a separate Section 8.07(b) instruction under these circumstances, for this particular offense, would have been redundant at best," we hold that the trial court did not err by omitting a Section 8.07(b) instruction. *See Garrison v. State*, No. 02-17-00197-CR, 2019 WL 405633, at *2 (Tex. App.—Fort Worth Jan. 31, 2019, pet. ref'd) (mem. op., not designated for publication) (citations omitted) (holding that, when charging the jury on the offense of CSA of a child, the trial court committed no error by not instructing the jury under Section 8.07(b)).

Ruiz cites *Taylor v. State* for the proposition that the trial court should have included a limiting instruction. 332 S.W.3d 483, 488–89 (Tex. Crim. App. 2011). However, in that case, the jury charge instructed the jury that it could consider conduct committed at any time within the limitations period. *Id.* at 488. The Court of Criminal Appeals held that "a jury charge is erroneous if it presents the jury with a much broader chronological perimeter than is permitted by law." *Id.* As we have stated, the charge in this case correctly limited the jury's consideration to conduct committed after Ruiz turned seventeen.[11]

Ruiz argues that in closing argument, the prosecutor "intentionally attempted to mislead the jury as to Ruiz's possible ages when he would have committed the alleged acts." We assume that this argument relates to a harm analysis, *see Almanza*, 686 S.W.2d at 171 (stating that arguments of counsel are considered in evaluating harm from an erroneous jury instruction), but we are unclear whether it relates to the failure to include a limiting instruction or one of the other alleged errors in the charge. Nevertheless, we disagree with Ruiz's characterization of the record.

He cites to a part of the prosecutor's argument stating that Ruiz lived with Olivia for seven years and used his role as her stepbrother and as Elena's half-brother to "systematically abuse these girls over a long period of time." Ruiz further cites to

---

[11]Further, as we pointed out in *Garrison*, the offense alleged in *Taylor* was aggravated sexual assault, which unlike CSA, does not include as an element that the actor be seventeen or older. 2019 WL 405633, at *1. Here, the jury charge correctly included Ruiz's age as an element of the offense.

the prosecutor's statements in rebuttal that Ruiz "made [Olivia] touch his penis under the covers"—an act that occurred when Ruiz was not yet seventeen—and to an act of sexual contact that Ruiz committed against Elena—an act for which he could be convicted so long as he was at least fourteen when he committed it. In context, these statements do not reflect a deliberate misleading of the jury about how old Ruiz needed to be when he committed the acts against Olivia to be convicted for those acts. The prosecutor stated,

> 2008 . . . when [Elena]'s 6 and [Olivia] is 5, that November, the Defendant turned 14. All the conduct after that point against [Elena], he is now liable for in this court. . . .

> There he made [Olivia] touch his penis under the covers. He touched her and penetrated her to make her bleed. He made [Elena]—he touched her while they were playing the game. Remember they talked about that. He made contact between his sexual organ and [Elena]'s sexual organ.

> . . . November of 2011, is when he turned 17. So now he faces justice on the conduct against [Olivia] and the charge involving [Olivia].

In context, the prosecutor's statements reminded the jury of the relevant date after which Ruiz's acts against Elena could support a conviction for the offenses that were perpetrated against her and the separate, later date for the jury to apply in considering his acts against Olivia. Although the prosecutor referenced an act committed against Olivia before Ruiz turned seventeen, it is clear from the context that the prosecutor was telling the jury that it should consider acts committed against Olivia after November 2011.

19

## 2. Application paragraph's omission of duration requirement

We next address Ruiz's arguments related to how the charge addressed the thirty-day-duration element of the offense. He makes several related arguments in this section of his brief. First, he points out that the application paragraph did not contain the thirty-day duration requirement. He contends that because the application paragraph omitted the duration requirement but included the date range between Ruiz's seventeenth birthday and Olivia's fourteenth birthday, the application paragraph could have allowed the jury to convict him based on acts that were committed within that date range but that were not committed thirty days apart.[12] Second, he complains that the jury charge omitted language used in the Texas Criminal Pattern Jury Charge for the CSA offense; the pattern charge states that the jury "must all agree that at least thirty days passed between the first and last acts of sexual abuse committed by the defendant." Third, he argues that the jury charge never told the jury that it had to find the thirty-day duration requirement beyond a

---

[12]Relatedly, Ruiz also asserts that the two paragraphs in Section 2 of the abstract portion of the charge contained contradictory information because in the first paragraph, it informed the jury about the thirty-day duration requirement and because in the second paragraph, it told the jury that the State had to prove that the acts of abuse occurred after November 5, 2011, the date on which Ruiz turned seventeen, and October ___, 2016, when Olivia turned fourteen. We disagree that these paragraphs, by themselves, contain contradictory information. These two paragraphs gave the jury two separate categories of necessary information. Put together, they told the jury that it could consider only the abuse that had occurred within a specific date range and that, in considering acts that occurred within that date range, it had to unanimously agree that that there were two or more acts of sexual abuse during a period that was thirty days or more in duration.

reasonable doubt. Relatedly, he further complains that the application paragraph "made zero reference to" the thirty-day duration requirement "as being an element of the offense, to be found beyond a reasonable doubt."

As for his second argument regarding the pattern jury charge language, although "the pattern jury charges should act as a guide for both the trial court and the bar," a trial court is not required to follow the pattern jury charges. *Williams v. State*, No. 02-20-00104-CR, 2021 WL 5227167, at *5 (Tex. App.—Fort Worth Nov. 10, 2021, no pet.) (mem. op., not designated for publication). Regarding his third and fourth arguments, we disagree that the jury charge as a whole did not instruct the jury that the duration requirement was an element of the offense. Section 1 in the abstract portion included the duration requirement. *See Fields v. State*, No. 01-20-00280-CR, 2022 WL 3268525, at *3 (Tex. App.—Houston [1st Dist.] Aug. 11, 2022, pet. ref'd) (citing *Vasquez*, 389 S.W.3d at 366, and noting that the abstract portion of a charge sets out the offense's elements). Additionally, Section 5 of the charge told the jury that the prosecution had to prove "each and every element of the offense charged beyond a reasonable doubt." Although Ruiz is correct that the application paragraph did not tell the jury that the thirty-day duration requirement was an element of the offense, Section 1 of the charge did. The jury was also told that it had to unanimously agree

21

that Ruiz had committed two or more acts of sexual abuse "during a period that is 30 days or more in duration."[13]

Ruiz is correct, however, although the application paragraph provided the jury with the date range that it could consider in evaluating the evidence of abuse (from Ruiz's seventeenth birthday to the day before Olivia's fourteenth birthday), the paragraph omitted the thirty-day duration requirement. It is the application paragraph of the charge that authorizes a conviction, *Crenshaw v. State*, 378 S.W.3d 460, 466 (Tex. Crim. App. 2012), and the application paragraph here omitted an element of the offense.

It is not necessary to include every element of an offense in the application paragraph if the application paragraph refers to other parts of the charge that do set out the elements, *see Dinkins v. State*, 894 S.W.2d 330, 339 (Tex. Crim. App. 1995); *Thompson v. State*, No. 02-18-00084-CR, 2019 WL 3819265, at *10 (Tex. App.—Fort Worth Aug. 15, 2019, no pet.) (mem. op., not designated for publication), but the application paragraph here did not refer the jury to other parts of the charge. We will therefore consider whether that omission caused Ruiz egregious harm.

---

[13]In one sentence of his brief, Ruiz asserts that the charge "abrogated [his] right to a unanimous verdict and failed to require the jury to elect a specific act of abuse." We have, on multiple occasions, rejected the contention that the jury must unanimously agree on the specific acts of abuse that the defendant committed; rather, it is sufficient for the jury to unanimously find the commission of two or more acts of sexual abuse over the specified period of time. *See Pollock v. State*, 405 S.W.3d 396, 405 (Tex. App.—Fort Worth 2013, no pet.); *see also Williams*, 2021 WL 5227167, at *7.

### a. Entire jury charge

To evaluate harm, we first consider the charge as a whole. *Vasquez*, 389 S.W.3d at 366. Even though the application paragraph omitted the thirty-day duration requirement, the abstract portion of the charge tracked the statute.[14] *See Bazanes v. State*, 310 S.W.3d 32, 37 (Tex. App.—Fort Worth 2010, pet. ref'd) (stating that "the erroneous application paragraph appears less harmful" when considered within the context of the entire jury charge); *see also Turner v. State*, 573 S.W.3d 455, 463, 464 (Tex. App.—Amarillo 2019, no pet.) (holding that although the application paragraph in that case "confuse[d] the statutorily required thirty-day period for continuous sexual abuse with the 'on or about' periods alleged [in the indictment] with respect to commission of the predicate offenses," the application paragraph's tracking of the statute mitigated against a finding of egregious harm). The charge as a whole weighs against egregious harm.

### b. State of the evidence

We next consider the evidence in the case. *See Almanza*, 686 S.W.2d at 171. Olivia described one occasion when Ruiz committed sexual abuse against her while she was in the third grade. She then described another act of abuse, which she said happened after another (non-sexually-abusive) act that had occurred in the fourth

---

[14]Additionally, as noted, the jury was instructed elsewhere in the abstract portion that it had to unanimously agree that Ruiz had committed two or more acts of sexual abuse "during a period that is 30 days or more in duration."

23

grade, meaning that she had to be in at least the fourth grade when the second act of abuse took place. Thus, the jury had evidence of two acts of abuse that happened in two different school years. The state of the evidence weighs against egregious harm.

### c. Arguments of counsel and other relevant information

Counsel argument. Neither side mentioned the thirty-day duration requirement in its opening statement. The State did, however, tell the jury that the abuse had begun when Ruiz was "13, 14" and that the abuse continued for "a period of about seven years." In closing, both sides emphasized the importance of considering Ruiz's and Olivia's ages at the time of Ruiz's abusive acts, but neither side mentioned the duration requirement. In summary, the State told the jury that the abuse had continued over a long period of time, but it did not tell the jury that, for the CSA charge, it would have to find that Ruiz had committed two acts of abuse thirty days apart after he turned seventeen.

Voir dire. In voir dire, the prosecutor told the jury that the indictment alleged that two or more acts of sexual abuse had occurred over a period of time that was more than thirty days in duration. The prosecutor talked about the acts alleged and then said that the State had "alleged a series of sexual crimes against [Olivia] over an extended period of time, committed multiple times in that extended period of time." The jury was also told about lesser-included offenses and that "[i]t is possible for a jury to find [that] it didn't happen more than once or it didn't happen over the *requisite period of time*." [Emphasis added.] Thus, the venire panel was told that to convict on

24

the CSA charge, the jury would have to find at least two acts of abuse that had occurred over thirty days or more.

Jury notes. The jury sent out four notes during its deliberations. However, none of the notes raised questions that expressed confusion or a misunderstanding about the thirty-day duration requirement.[15]

The argument of counsel and other relevant evidence do not weigh in favor of egregious harm.

**D. Issue 2 Conclusion**

The trial court did not err by not including a limiting instruction under Section 8.07(b). As to egregious harm from the omission of the thirty-day duration in the application paragraph, neither side told the jury in voir dire or in opening statements or closing arguments that the jury had to apply both time references—that is, that the jury had to find that there were at least two acts committed over the required thirty-day period and that in making that finding, the jury could consider only evidence of abuse after Ruiz turned seventeen and before Olivia turned fourteen. However, the jury was told in voir dire that the CSA offense required two acts of abuse of over at least a thirty-day period, and the jury charge also contained that information. The inclusion of the duration-requirement language in the abstract portion of the charge

---

[15]Those notes stated: (1) "Requesting school records for [Elena] and [Ruiz]"; (2) "Requesting school records for [Olivia] and [Ruiz]"; (3) "Will the imposed sentences be served concurrently or will they be served consecutively"; and (4) "What is the difference between a sentence of 99 years and a sentence of life?"

helps mitigate harm from its omission in the application paragraph. *Williams*, 2021 WL 5227167, at *6. Further, and importantly, "because there was no evidence that the only acts of sexual abuse occurred less than thirty days apart," the state of the evidence weighs strongly against finding egregious harm. *Id.* Considering the entire record, the jury charge did not cause Ruiz egregious harm.[16] *See id.*; *see also Barrett v. State*, No. 05-21-00912-CR, 2023 WL 3143426, at *6 (Tex. App.—Dallas Apr. 28, 2023, no pet. h.) (mem. op., not designated for publication) (concluding that appellant was not egregiously harmed by application paragraph's omission of intent element because charge as a whole correctly instructed jury on intent). We therefore overrule his second issue.

---

[16]This case is distinguishable from this court's recent opinion in *Alkayyali v. State*, which also involved an element missing from the application paragraph. No. 02-21-00197-CR, 2023 WL 3017943, at *4 (Tex. App.—Fort Worth Apr. 20, 2023, pet. filed). In that case, Alkayyali was charged with the murder of his wife, Wasam Moussa, who died after Alkayyali assaulted her. *Id.* at *1. The jury charge application paragraph authorized the jury to convict Alkayyali of murder so long as it found that he had intended to cause Moussa serious bodily injury and had committed an act clearly dangerous to human life, but it left out the "causes the death of an individual" element of murder; thus, the charge did not require the jury to find that Alkayyali had actually caused her death. *Id.* at *3. But at trial, there were contested issues about whether Moussa's death had been caused by preexisting problems with her heart, and the wording of the application paragraph meant that a juror could have believed that Alkayyali assaulted Moussa but that Moussa's health issues rather than the assault caused her death, and under the charge that juror was instructed to convict Alkayyali of murder. *Id.* at *6. Thus, in *Alkayyali*, we held that the omission from the application paragraph vitally effected the defendant's main defensive theory and violated his Constitutional rights. In this case, on the other hand, there was no evidence that the only acts of abuse that Ruiz committed after he turned seventeen occurred less than thirty days apart. Thus, unlike in *Alkayyali*, the state of the evidence weighs against a conclusion that the omitted element caused Ruiz egregious harm.

26

## III. Constitutionality of Texas Penal Code Section 21.02

Ruiz argues in his final issue in cause number 02-22-00108-CR that the CSA statute is unconstitutional because it does not require jury unanimity on which specific acts of sexual abuse were committed. As Ruiz recognizes, this court has already rejected that argument. *See Pollock*, 405 S.W.3d at 405. Ruiz's reply brief asserts that he nevertheless presents his arguments "for purposes of error preservation in order to provide effective assistance of counsel." We acknowledge that Ruiz has raised the arguments, but we decline to overrule our precedent.

Ruiz further argues under this issue that the CSA statute allows for the admission of extraneous evidence that would otherwise be inadmissible:

> Take for example, a hypothetical case where a defendant is charged with acts against two separate victims, with two separate offenses each committed against the two alleged victims. Necessarily, under the statute, each individual juror need only pick two violations beyond a reasonable doubt to satisfy conviction under the continuing sexual assault statute. Yet the State purportedly will offer evidence on all four allegations without the standard protections accorded under Texas law. This leads to allowing propensity evidence without the standard protections accorded under law.

He asserts that "the jury could decide that the evidence did not reach to the standard of beyond a reasonable doubt on two of the allegations in the hypothetical" but would "still be able to use that evidence to determine whether the defendant committed other offenses because no limiting instruction was given to the jury."

However, under Code of Criminal Procedure Article 38.37, extraneous acts of sexual abuse are admissible for certain purposes and in certain circumstances, not only

27

in CSA cases but in other cases involving sexual offenses against a child. *See* Tex. Code Crim. Proc. Ann. art. 38.37; *cf. Deggs v. State*, 646 S.W.3d 916, 923 (Tex. App.—Waco 2022, pet. ref'd) (overruling as-applied constitutional challenge to Article 38.37). Thus, this type of evidence is not "otherwise inadmissible" outside the context of the CSA statute. We overrule this issue.

## IV. Conclusion in Cause Number 02-22-00108-CR

Having overruled Ruiz's three issues in appellate cause number 02-22-00108-CR, we move to his second case on appeal.

## The Sexual Assault Offenses Against Elena

We next address the issues that Ruiz raises in his appeal of his convictions for sexual-assault offenses against Elena.

## I. Certification as Adult

The case related to the acts that Ruiz committed against Elena began as a juvenile matter. In Ruiz's first issue in this appeal, he contends that the trial court—the 462nd District Court—did not have jurisdiction to convict him for the offenses against Elena because the trial court record does not reflect that Ruiz was certified as an adult or that the juvenile court waived jurisdiction.[17] In response, the State asserts

---

[17]Ruiz also asserts in one sentence in his brief that the record does not reflect that he waived a transfer hearing and grand-jury indictment. However, the transfer order states that Ruiz and his attorney "waiv[ed] a hearing on the State's Petition for Discretionary Transfer[ ] and . . . agree[d] to [Ruiz]'s transfer to adult criminal court" and that "[Ruiz] and [his] attorney . . . waiv[ed] Grand Jury Indictment."

28

that Ruiz did not preserve his claim that the district court did not properly assume jurisdiction and that the record reflects that the juvenile court complied with the Texas Family Code, waived original jurisdiction certifying Ruiz as an adult, and transferred the underlying conduct to criminal district court. We agree with the State that the district court had jurisdiction.

## A. The Transfer Proceedings

In the juvenile court, the State filed a petition to transfer the case to district court for criminal proceedings. On November 28, 2018, the juvenile court signed a waiver of jurisdiction and order of transfer to criminal district court. In the order, the juvenile court stated that Ruiz and his attorney had waived a hearing on the transfer and had agreed to the transfer to adult criminal court. *See* Tex. Fam. Code Ann. § 54.02 (requiring hearing for juvenile court to consider transfer of a child for criminal proceedings). The juvenile court also signed an order setting bond in which the court stated that Ruiz had been certified to stand trial as an adult. Ruiz was then indicted on three counts of aggravated sexual assault involving Elena. Ruiz's brief acknowledges that the juvenile court waived jurisdiction, but he complains that nothing in the record shows that the district court (1) was aware that the case had been a juvenile matter or (2) had accepted jurisdiction.

## B. Analysis

The Family Code does not require the juvenile court to file its transfer order with the transferee court. *Moss v. State*, 13 S.W.3d 877, 882 (Tex. App.—Fort Worth

29

2000, pet. ref'd). Nevertheless, because the juvenile court retains jurisdiction until it properly transfers the case to adult criminal court, jurisdictional questions may arise when the transfer order does not appear in the trial record. *See id.* at 882–84. In cases in which the juvenile court waived jurisdiction but its transfer order was not sent to the district court, courts have not reversed convictions for lack of jurisdiction if the record showed that the district court was otherwise aware of the transfer. *See, e.g., Rushing v. State*, 50 S.W.3d 715, 727 (Tex. App.—Waco 2001), *aff'd*, 85 S.W.3d 283 (Tex. Crim. App. 2002); *see also Ellis v. State*, 543 S.W.2d 135, 137 & n.2 (Tex. Crim. App. 1976) (noting that the record reflected that district court had the transfer order in its possession regardless of whether the order was actually on file, and advising "that to prevent jurisdictional problems from arising[,] the order of the juvenile court waiving jurisdiction and transferring same to the proper court for criminal proceedings . . . [should] be filed with the clerk of the court to which the jurisdiction is transferred").

Ruiz argues that the district court in this case lacked jurisdiction, and his conviction is therefore void, because the transfer order was not in the trial court's file at the time of trial, and that there is no other indication that the district court was aware of the transfer and had assumed jurisdiction[18] All of Ruiz's arguments under

---

[18]One of the cases cited by Ruiz, *Moss v. State*, 13 S.W.3d 877, 885 (Tex. App.—Fort Worth 2000, pet. ref'd), relied in turn on *Ellis*, a case that was decided at a time when the district court was required under Family Code Section 54.02 to conduct an examining trial upon transfer from the juvenile court. *See Menefee v. State*, 561 S.W.2d

this issue hinge on his assertion that the juvenile court's transfer order was not filed with the district court.

However, the appellate record indicates that the transfer order *was* filed with the district court. The clerk's record from the district court includes the order waiving jurisdiction. The clerk's record also includes a "Receipt of County Clerk for Original Instruments and Certified Copy," signed by the deputy district clerk, acknowledging receipt from the juvenile court clerk of the original instruments and certified copies filed in the case.

Ruiz may be basing his arguments on the fact that the index in the clerk's record lists the filing date of the transferred documents as June 27, 2022, the day before the record was delivered to this court. Needless to say, if the transfer order had not been filed with the district court until that date, the order could not have been on file with the district court at the time of trial. However, the date stated in the clerk's record index is not an accurate reflection of when the transfer order was filed with the district court. The clerk's record includes a November 28, 2018 letter from the county court clerk to the district clerk, in which the county court clerk stated that she was sending with the letter copies of all "in[stru]ments and orders" in the case. The county

---

822, 827–28 (Tex. Crim. App. 1977). At that time, it was especially important for the transferee criminal court to know when a matter had been transferred from a juvenile court because a failure to hold the examining trial rendered void any resulting conviction. *See id.* Section 54.02 no longer has the examining-trial requirement. *See* Tex. Fam. Code Ann. § 54.02; Tex. Code Crim. Proc. Ann. art. 16.01 (giving trial court discretion to grant an examining trial upon transfer from juvenile court).

court clerk's index of documents in the juvenile court's file included the juvenile court's transfer order. On March 5, 2019, the deputy district clerk signed a receipt for the transferred case documents. The same day, the grand jury returned an indictment on the transferred matter. Accordingly, the record shows that the district court clerk received the transfer order no later than the date on which Ruiz was indicted. We overrule Ruiz's first issue in his appeal of the case involving Elena.

## II. Evidentiary Sufficiency

In his second issue, Ruiz challenges the sufficiency of the evidence to convict him on any of the charged offenses in the case involving Elena. Ruiz argues that the evidence is insufficient to show that the actions for which he was convicted occurred and that if the acts did occur, the evidence is insufficient to show that the actions occurred after he turned fourteen.

As for the evidence that Ruiz committed the actions found by the jury, the charge asked the jury to find in Count I whether Ruiz was guilty of causing Elena's sexual organ to contact his sexual organ, and Elena testified about a time at the Heritage Lakes house when that happened. Ruiz argues that Elena stated that "honestly, . . . it might have been, like, his hands," and thus the evidence was insufficient to show that it was his sexual organ that contacted Elena's. However, she was later asked if there "[w]as . . . ever a time wh[en] his penis came in contact with [her] vagina," and she unequivocally answered, "Yes." She then described the event.

Count II of the jury charge asked whether Ruiz was guilty of causing Elena's mouth to contact his sexual organ, and Elena testified about that happening. Regarding Count III, the jury found Ruiz guilty of indecency with a child, a lesser-included offense of Count III as alleged in the indictment, and Elena testified to numerous instances of Ruiz's touching her sexual organ with his hand.

As for when the actions occurred, with respect to Count III, the indecency-by-contact-conviction, Elena testified to at least one occurrence that had happened at the Austin Ranch apartment when she, Ruiz, and Olivia were all sitting on the couch together. Ruiz turned fourteen in November 2008. Although the jury had contradictory testimony about when the families moved to the Austin Ranch apartment, all of the evidence on that question placed the move after 2008. Accordingly, the jury could find beyond a reasonable doubt that the event had occurred after Ruiz's fourteenth birthday.[19]

Ruiz asserts that Olivia testified that "this incident occurred at Heritage Lakes," but the testimony of Olivia to which he cites was testimony about acts that Ruiz had committed when the three of them were all sleeping in the same bed, not an event on

---

[19]Further, as the State points out, Olivia stated that when the families lived at the Heritage Lakes house, there were times when she, Ruiz, and Elena were in the same bed, and Ruiz had touched her vagina. The first instance that she described happened when she was in the first grade, which would place it no earlier than 2009, after Ruiz had turned fourteen. She said this happened on "many occasions," and because the two girls had talked about it, Olivia knew that he was doing the same thing to Elena.

the couch.[20] Even if Olivia had been referring to an act that Ruiz had committed on a couch, the testimony does not establish that the act happened only once and only at the Heritage Lakes house and, further, the jury could have resolved any contradictions in Elena's and Olivia's testimony and accepted Elena's testimony that Ruiz had committed the act at the Austin Ranch apartment.

As for the other two counts, the timeline testimony was less clear. Elena was asked multiple times how old she was or what grade she was in when the conduct she described had occurred, but she could not say for sure.[21] However, the jury was not left without information on the timing question. Elena stated that most of the acts of abuse that Ruiz committed against her had occurred at the Heritage Lakes house and that the two acts alleged in Count I and Count II had happened there. From Olivia's testimony and the school records, the jury could have determined that they had moved to that house in 2008, sometime near the beginning of the fall semester, when Olivia started kindergarten. Although Olivia's mother stated that the families had moved to the house in 2007, the jury could have accepted Olivia's testimony on that point, and the school records backed up her testimony.

---

[20]Olivia was asked about the incident on the couch at Austin Ranch, but she stated that she could not remember it.

[21]Elena testified that she was "still pretty little" when the abuse began—she was six in 2008—and did not really understand what was happening or that it was wrong for Ruiz to do what he did.

Ruiz turned fourteen in November of that year—that is, within a few months of their moving to the Heritage Lakes house and the school year starting—meaning that there was a relatively short period of time when he could have committed abuse before he turned fourteen. Olivia and Elena both testified that they had talked to each about what Ruiz had done to them, from which the jury could have found that he had abused them around the same time. Further, from Olivia's testimony that the move to the Heritage Lakes house and Ruiz's abuse had begun when she was in kindergarten, and from Elena's testimony that the abuse had happened to her at the Heritage Lakes house, the jury could have found that Ruiz's abuse of Elena had started closer to the fall semester of 2008, if not after school had begun that semester. Further, Elena testified that during the relevant period, she lived with her mom and was only at her father's house every other weekend, meaning that Ruiz had access to her only a few days a month. Ruiz thus would have had limited opportunities to commit the acts of abuse before he turned fourteen in November of that year. Finally, Elena testified that before his penis contacted her vagina, he had done "other things" and that his touching her vagina with his hand had happened "pretty early" in the timeline of his abuse—in other words, he began his abuse with touching and then escalated his behavior.

Given that a child will not often know the exact date on which she was sexually assaulted, and the younger the child, the more likely it is that she will be unsure about when the offense occurred, courts should not impose unrealistic expectations

35

regarding proof of the timing of the offense. *Dixon v. State*, 201 S.W.3d 731, 736 (Tex. Crim. App. 2006) (quoting *Sledge v. State*, 953 S.W.2d 253, 256 n.8 (Tex. Crim. App. 1997)). The State had to prove beyond a reasonable doubt that the alleged acts occurred after Ruiz's fourteenth birthday, *see* Tex. Penal Code. Ann. § 8.07(a)(6), but it was not required to prove the specific dates after that on which the abuse occurred. Viewing the evidence in the light most favorable to the verdict, and giving deference to the jury's responsibility to weigh the evidence and draw reasonable inferences, we hold that the jury could have found beyond a reasonable doubt that Ruiz had committed the acts of which he was convicted after he turned fourteen. We overrule his second issue.

## Conclusion

Having overruled each of Ruiz's issues in both appeals, we affirm the trial court's judgments.

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  June 15, 2023

36